Charles H. Kerr, Appellant, v. Genevieve L. Schrempp
et al., Heirs at Law of John Schrempp, Deceased,
Appellees.

Gen. No. 9,445.

Heard in this court at the February term, 1945. Opinion filed February 28, 1945. Rehearing denied May 1, 1945. Released for publication May 3, 1945.

ED. C. KABURICK, M. J. BROWN and HERBERT W. DEY, all of Hillsboro, for appellant.

OMER POOS, of Hillsboro, for appellees.

MR. PRESIDING JUSTICE DADY delivered the opinion of the court.

This is a suit at law by the assignee of a promissory note against the devisees of one of the makers thereof. A jury trial was waived, and the trial court entered judgment for defendants. Plaintiff appeals.

On July 9, 1931, John Schrempp and Louis Engelmann, as comakers, for value, executed and delivered to Nokomis State Bank a promissory note for $900 due July 9, 1932.

Thereafter the bank was duly adjudicated insolvent

in a proceeding in the circuit court of Montgomery county, and in such proceeding a receiver was duly appointed and qualified. On February 13, 1940, the receiver, pursuant to order of court, duly sold and assigned such note to the plaintiff Charles H. Kerr.

On November 1, 1931, Schrempp died testate, seized of certain real estate in said county, but owning no personal property whatever at the time of his death. By his will he devised such real estate in certain proportions to his wife and children, who, as such devisees, ever since the death of Schrempp have been and are the owners of such real estate.

On January 2, 1942, the plaintiff brought this action to recover on said note against the defendant devisees of such real estate, asking that judgment be entered against the defendants for the amount due on the note, to be satisfied out of such real estate, apportioned in accordance with the respective interests of the defendants. Louis Engelmann was also made a codefendant, but thereafter on motion of plaintiff the suit was dismissed as to him.

Sec. 12, ch. 59, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 55.12], covering the subject of "Frauds and Perjuries," provides that: "When any lands . . . shall . . . be devised to any devisee, and the personal estate of the . . . devisor of such devisee shall be insufficient to discharge the just demands against such . . . devisor's estate, such . . . devisee shall be liable to the creditor of their . . . devisor to the full amount of the lands . . . as may . . . be devised to the said . . . devisee; . . . and executions may be taken out upon any judgment so obtained against such . . . devisee, to the value of the said lands, . . . as if the same were his own proper debts. . . ."

There is no dispute about any of the facts.

As the case is presented the defendants make only two contentions why plaintiff should not recover.

The first contention of the defendants is that Louis Engelmann, who was a comaker of and a joint debtor on the note, was released from the payment of· such note by the release hereinafter referred to.

■ ■ A plain, absolute, unconditional and unambiguous release of a joint debtor operates in law to release his co-obligor. (See *Clark v. Mallory,* 185 Ill. 227). The burden of establishing a release is upon the party relying upon it. (See *Wallner v. Chicago, Consol. Traction Co.,* 150 Ill. App. 242, 53 C. J. p. 1277.)

Although the burden of proving such release was, in the first instance, on the defendants, the plaintiff, as a part of his evidence in chief, proved that on April 21, 1934, the bank receiver filed in the circuit court a petition in which it was alleged that on December 6, 1933, among the assets of the bank was a note for $1,050 dated and executed December 25, 1931, by Edward Engelmann, Gertrude Engelmann and Louis Engelmann, and that on December 6, 1933, the bank receiver obtained a judgment by confession in the circuit court of Montgomery county for $1,267.82 on such note and against the signers thereof, including Louis Engelmann, that Louis Engelmann had agreed to turn over to the receiver all of his personal property, except $100 exemption, in consideration that the receiver release such judgment, and that all of Louis Engelmann's property. consisted of certain personal property therein described. Such petition asked that the court authorize the receiver to accept such ·personal property in satisfaction of such judgment. Plaintiff further proved that on April 21, 1934, the circuit court entered an order authorizing the receiver to "accept said (personal) property in full settlement of said judgment."

The defendants then introduced in evidence a release signed by the bank receiver, dated "this —— day of January, 1934." Such release recited that whereas

Louis Engelmann was "heretofore" indebted to Nokomis State Bank, and whereas the receiver "has obtained judgment against said Louis Engelmann in the circuit court of Montgomery County, Illinois; and said Louis Engelmann and the undersigned having agreed to settle all of said Louis Engelmann's indebtedness by his turning over certain property to the receiver . . . as payment in full of his indebtedness to same; and said property having been turned over to this receiver in strict accordance with the terms of his agreement; therefore know all men by these presents that I . . . receiver . . . do hereby . . . release . . . Louis Engelmann . . . of and from all manner of actions, cause of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity which Nokomis State Bank or the undersigned, as receiver . . . ever had, now have or . . . hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the date of this instrument."

This is the only release relied on by defendants.

The plaintiff contends that such release was executed under the aforesaid order of April 21, 1934, which authorized the receiver to compromise the judgment entered December 6, 1933. The defendants contend that inasmuch as the petition to compromise a judgment was filed April 21, 1934, approximately three months after the apparent execution of the release, the release being dated "January ——, 1934," therefore "most certainly the order relied upon by the appellant had to do with another judgment which involved additional parties, viz, Edward and Gertrude Engelmann."

There is nothing in the record to show when the release was actually executed other than the fact that it was dated "the —— day of January, 1934."

If, as contended by defendants, the release relied

on was not executed pursuant to or in connection with the order of April 21, 1934, then there is nothing in the record to show that the court at any time authorized the receiver to execute such release. It is our opinion that there is no presumption that the release relied on was duly executed pursuant to any order of court, and that unless the receiver was duly authorized by the court to compromise or release the indebtedness represented by the note sued on in the present case, the receiver was powerless to do so, and it is our opinion that the burden of proving that the receiver was duly authorized to execute such release was on the defendants and not on plaintiff. The receiver of a bank has only such authority as is conferred on him by statute or court decree. (*Powell v. Voight*, 348 Ill. 605; 9 C. J. S. p. 967, sec. 500.) A bank receiver has no authority to compromise or settle claims of the bank without the approval of the court. (9 C. J. S. p. 971, sec. 501.)

If, as contended by the plaintiff, the release was based on the order of April 21, 1934, then in our opinion such order did not authorize the receiver to compromise or release any indebtedness of Louis Engelmann, other than the indebtedness represented by the judgment entered on December 6, 1933, which judgment, as will be noted, was based on an indebtedness having no connection with the note sued on in the present case.

■■ Defendants argue that plaintiff as assignee is in no better position than would be the receiver to contest the validity of the release. Assuming this to be true, this did not relieve defendants from the necessity of proving a valid release.

It is our opinion that defendants have not maintained their defense of a release.

■■ Moreover "the law is that 'General words of release will be restrained in effect by the recitals contained in the instrument as applied to the subject matter; and this is true in law as well as in equity.' " (See

*Bassett v. Lawrence,* 193 Ill. 494; *Todd v. Mitchell,* 168 Ill. 199, and *Chicago Union Traction Co. v. O'Connell,* 224 Ill. 428.) As to the release in question it will be noted that the general blanket terms of the release are preceded by the recital that whereas the receiver had obtained such judgment against Engelmann, and whereas Engelmann and the receiver had ''agreed to settle all of said . . . Engelmann's indebtedness. . . .'' Applying to the facts in the present case the rules of construction laid down in the foregoing cited cases, it is also our opinion that, so far as the record before us shows, the release in question was not intended to release Engelmann from his liability on the notes sued on in the present case.

The only other defense contended for by defendants is that the cause of action is barred by the statute of limitations.

Sec. 15 of our Limitations Act (par. 16, ch. 83, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 107.275]) provides that ''Actions on unwritten contracts . . . and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued.''

Sec. 16 (par. 17 of the same act [Jones Ill. Stats. Ann. 107.276]) provides that ''Actions on . . . promissory notes . . . or other evidences of indebtedness in writing, shall be commenced within ten years next after the cause of action accrued; . . . .''

The note sued on became due July 9, 1932. This suit was brought on January 2, 1942, which was within the ten-year period provided for in said Section 16, but not within the five-year period provided for in said Section 15.

The defendants contend that the present suit is one of the *''civil actions not otherwise provided for''* within the meaning of sec. 15 of the Limitations Act, and therefore is barred by such sec. 15 because the cause of action against the defendants accrued on the

death of the decedent and more than five years before the commencement of this suit. Such contention that this suit is one of the *"civil actions not otherwise provided for"* is based on the argument that inasmuch as the defendants could only be held liable because of the provisions of sec. 12 of the Statute of Frauds and Perjuries, it follows that the right of action of the plaintiff accrues from such statute and not from the promissory note, and that this action is in fact not on the note but on the statute, and the defendants cite cases such as *Blakeslee's Storage Warehouses, Inc. v. City of Chicago,* 369 Ill. 480, holding that the five-year statute of limitations generally applies to actions based on statutes.

Defendants concede that the courts of this State have uniformly held that the general statutes of limitations (which includes secs. 15 and 16, *supra*) applies to actions such as the present case, brought under sec. 12 of the Statute of Frauds and Perjuries. (See *Ryan v. Jones,* 15 Ill. 1; *Durflinger v. Arnold,* 329 Ill. 93, and *Trustees of Danvers Literary & Library Ass'n v. Skaggs,* 280 Ill. App. 125.)

So far as we know, the case of *Trustees of Danvers Literary & Library Ass'n v. Skaggs, supra,* is the only reported Illinois decision which purports to pass on the question of what particular section of the general Limitations Act is applicable. In the *Skaggs* case the action was brought against the devisees of the deceased Skaggs to recover on a promissory note, as in the present case, and this court there said at page 135 of the opinion, "By their third plea appellees interposed the five-year statute of limitations. There is no merit in this contention of appellees. This action was brought under Sections 10, 11 and 12 of the Statute of Frauds and Perjuries, . . . and the general statute of limitations alone applies to such actions." The defendants say that such holding in the *Skaggs* case was *dictum* because (although the facts do not appear in

the reported opinion) the printed abstract in said case on file in this court shows as a matter of fact (which on an examination of such abstract we find to be true) that the action was brought within five years after the death of Skaggs, and therefore this court there had no occasion to differentiate between the five and ten year statutes. This would seem to take away the value of the *Skaggs* case as a precedent.

The cases of *Hauselt v. Patterson,* 124 N. Y. 349, 26 N. E. 937, and *Pyatt v. Waldo,* 85 Fed. 399, are the only outside cases called to our attention which we have had access to that we consider in point. In the *Hauselt* case the action arose under a statute of frauds and perjuries similar to our statute. The court there said, ''The contention that a recovery was barred by the statute of limitations is not sustained. Although the remedy is given by the statute, the cause of action is founded upon an obligation of the ancestor of the defendants to pay the sum secured by the mortgage represented by his bond; and the statute of limitations is no more available to the heirs than it would have been to McCunn if he had been living.'' In the *Pyatt* case the court said: ''The question of the statute of limitations seems to be settled by *Colgan v. Dunne,* 50 Hun. 443, 3 N. Y. Supp. 309, and *Hauselt v. Patterson,* 124 N. Y. 349, 26 N. E. 937, both of which cases hold that, although the remedy is given by statute, the cause of action is founded upon the obligation of the ancestor to pay the bond, and that the statute of limitations is no more available to the heirs than it would have been to the ancestor. The bond being under seal, by the statutes of New York the action may be brought within 20 years from its maturity as has been done.''

It is our opinion that the right of action of the plaintiff is not one of the ''civil actions not otherwise provided for'' within the meaning of the Limitations Act, and it is our opinion that, although the remedy is given the plaintiff by sec. 12 of the Statute of Frauds

and Perjuries, yet the cause of action is founded on the obligation of the defendants' devisor to pay the note sued on. Said sec. 12 does not make the defendants personally liable. A personal judgment cannot be rendered against them and no judgment can be rendered against them other than one to be satisfied only out of the real estate devised to them. (*Branger v. Lucy,* 82 Ill. 91, 93.)

For the reasons indicated the judgment of the circuit court is reversed and the cause is remanded to such court for further proceedings in due course consistent with this opinion.

*Reversed and remanded with directions.*